A05A1813. NAIR v. ARAMARK FOOD SERVICE CORPORATION.
(625 SE2d 78)

RUFFIN, Chief Judge.

Raghavan Nair sued Aramark Food Service Corporation, alleging that Aramark negligently maintained a bench located in a dining facility at Emory University. The bench collapsed after Nair sat on it, and Nair was injured in the fall. Aramark moved for summary judgment, arguing that since it neither owned nor occupied the premises where Nair fell, it could not be held liable. The trial court agreed and granted summary judgment in Aramark's favor, and Nair appeals. We reverse.

A trial court properly grants summary judgment when there is no genuine issue of material fact and the movant has established entitlement to judgment as a matter of law.[1] We conduct a de novo review of the grant of a motion for summary judgment, "and we view the evidence, and all reasonable conclusions and inferences drawn from it, in [a] light most favorable to the nonmovant."[2]

Viewed in this light, the record reveals that on October 1, 2001, Nair, a doctoral candidate working at an Emory research laboratory, ate lunch at a university cafeteria. He took his meal to a seating area in an outside courtyard and sat at a metal picnic-type table. A few minutes later, Nair "leaned back a little bit away from [his] plate[,] and the bench collapsed [and] tipped over backwards."

Nair reported the incident to Gene Burke, an Aramark employee who managed the facility. Burke walked over to inspect the bench, and he noticed it was "loose" and "sliding back and forth." According to Burke, he reported the broken bench to his supervisor. Burke then had his "employees get caution signs and caution tape to block that section of the bench off." Nair presented testimony that the bench was ultimately repaired by an Aramark employee.[3]

Under a contract between Aramark and Emory, Aramark managed and operated the University's food service program. The contract provided that Aramark "shall direct, supervise, and control all

---

[1] See *CSX Transp. v. Deen*, 269 Ga. App. 641 (605 SE2d 50) (2004).

[2] (Punctuation omitted.) Id.

[3] Aramark contends that the evidence in this regard was equivocal. On appeal, however, we construe the evidence most favorably to Nair as the nonmovant. See id.

employees in the University's foodservice operation, whether [Aramark] or University employees." Aramark also bore the responsibility for sanitation and cleaning with the exception of the "heavy cleaning of Dining Terraces, Ballroom and Private Dining Spaces in the Dobbs University Center and for set-up for catering functions." With regard to maintenance, Emory was required to

> furnish the services of its maintenance staff, or [it] shall authorize the use of outside maintenance services, as and when required for proper maintenance and repair of the foodservice facilities and the roofs, ventilation and air conditioning equipment, elevators, and exterior plumbing lines. The University shall be responsible for all such costs of maintenance, including repair parts, labor and supplies, whether provided by the University's maintenance staff or by outside maintenance services.

Aramark, on the other hand, assumed responsibility for maintaining "[e]quipment." Specifically, the contract provided that Aramark

> shall be responsible for the maintenance, including both labor and parts, of the foodservice equipment, including the ovens, hoods, dishwashers, fan coil units, walk-in coolers, stoves, shredder(s), and refrigerators, and shall be responsible for the maintenance of the office equipment. However, if replacement of equipment is necessary for the continuing performance of said equipment, the cost of such equipment replacement shall be borne by the University.

After his fall, Nair filed suit against Aramark, claiming that it owed him a duty to exercise ordinary care in maintaining the dining facility, which it breached. Aramark moved for summary judgment, and the trial court granted the motion. This appeal ensued.

"OCGA § 51-3-1 imposes upon an owner or occupier of land the nondelegable duty to exercise ordinary care to keep the premises and approaches safe for invitees."[4] Here, it is undisputed that Emory owns the property where Nair fell.[5] However, Nair contends that there is an issue of fact as to whether Aramark was an occupier of the premises.

"Under the laws of this State, a [property owner] is not liable to any person who is injured on the [property] if full possession and

---

[4] *Greene v. Piedmont Janitorial Svcs.*, 220 Ga. App. 743, 744 (2) (470 SE2d 270) (1996).

[5] The complaint Nair filed against Aramark did not contain any claim against Emory.

complete control of the [property] were delivered and surrendered to an independent contractor."[6] If, however, the property

> owner surrenders a portion of the premises to an independent contractor, the owner is relieved of his duties with regard to the portion of the premises which he no longer controls. In this regard, possession may be defined as having personal charge of or exercising the rights of management or control over the property in question. Custody and control are the commonly accepted and generally understood incidents of possession.[7]

Whether a contractor has assumed full possession and control over the premises is generally a question of fact.[8]

The contract between Aramark and Emory provided that Aramark "shall take reasonable and proper care of all premises and equipment under its custody and control." Accordingly, Aramark assumed control over a portion of the premises. The issue is whether Aramark assumed control over the table at which Nair fell.

Under the contract, Emory was responsible for maintaining the foodservice facilities, including the servicing of "roofs, ventilation and air conditioning equipment, elevators, and exterior plumbing lines." Aramark, on the other hand, was responsible for maintaining the "equipment," which includes "the ovens, hoods, dishwashers, fan coil units, walk-in coolers, stoves, shredder(s), and refrigerators." We are unable to determine from this language whether the parties intended that the table be considered part of the facility or part of the equipment.[9] Thus, the issue must be resolved by a jury.[10] The cases cited by Aramark, *R. & S. Farms, Inc. v. Butler*[11] and *Bartlett v. Holder Constr. Co.*,[12] do not require a different result as neither involves a situation in which a contract apportioned control of the premises between the owner and the contractor. It follows that the trial court erred in granting summary judgment to Aramark on this basis.

*Judgment reversed. Johnson, P. J., and Barnes, J., concur.*

---

[6] *Towles v. Cox*, 181 Ga. App. 194, 195 (1) (351 SE2d 718) (1986).

[7] (Punctuation and footnote omitted.) *West v. Briggs & Stratton Corp.*, 244 Ga. App. 840, 844-845 (536 SE2d 828) (2000).

[8] See *Bartlett v. Holder Constr. Co.*, 244 Ga. App. 397, 399 (535 SE2d 537) (2000).

[9] See *Wallis v. B & A Constr. Co.*, 273 Ga. App. 68, 70 (1) (614 SE2d 193) (2005) ("[T]he cardinal rule of construction is to ascertain the intent of the parties.").

[10] See *Bartlett*, supra at 400; *Towles*, supra at 196-198.

[11] 258 Ga. App. 784 (575 SE2d 644) (2002).

[12] Supra.

DECIDED DECEMBER 12, 2005.

*Jones & Bell, Lloyd N. Bell,* for appellant.
*William P. Tinkler, Jr., Hillary A. Hague,* for appellee.